## MID-WEST CHEVROLET CORP. et al. v. NOAH.

No. 23772.   June 11, 1935.

Rehearing Denied July 16, 1935.

West & Davidson, for plaintiffs in error.

Aby & Tucker and Frank Settle, for defendant in error.

PER CURIAM. The parties will be referred to as they appeared in the lower court; the plaintiffs in error were defendants, and the defendant in error was plaintiff.

The defendant Mid-West Chevrolet Corporation was engaged in selling Chevrolet automobiles and trucks in the city of Tulsa. The defendant Crasse was truck sales manager for said company, and one Hal Hays was general sales manager and vice president of the corporation. Shortly prior to June, 1931, the defendants ran the following advertisement in the Tulsa newspapers:

> "Employment
> "Help Wanted, Male
> "Wanted Men
> "Who can finance new trucks
> "Good Haul; Long Job
> "Call 4-9191"

Upon reading this advertisement, the plaintiff went to the place of business of the defendants and entered into negotiations for the purchase of a truck.

It is alleged in plaintiff's petition that the defendants represented and guaranteed to plaintiff that if he would purchase a truck and make the down cash payment thereon, he would be given certain work at which he could earn from $12 to $14 per day by the use of the truck, which would enable him to pay certain expenses and the balance of the purchase price of the truck; that plaintiff, relying upon such representations and guarantees made by the

defendants, entered into a written contract for the purchase of a truck, the representations and guarantees as made by the defendants and relied upon by the plaintiff constituting the sole and only reasons for plaintiff purchasing the truck; that at the time he purchased the same he made the down payment of $327 and gave his note for $624, the balance of the purchase price; that thereafter plaintiff was sent by defendants to the state of Arkansas for the purpose of engaging in work with the truck upon the highways in that state; that the work was not as represented and guaranteed by the defendants, and that he returned to Oklahoma and worked at other places where the promises and guarantees of the defendants were not carried out; and that by reason of defendants' failure to carry out the guarantees and promises made by them, the defendants had been guilty of fraud and deceit, and plaintiff had been damaged thereby.

The agreement to purchase the truck was in writing, and contained the following paragraph:

"The above comprises the entire agreement affecting this purchase and no other agreement or undertaking of any nature concerning same has been made or entered into, or will be recognized."

After the purchase of the truck, plaintiff defaulted in his payments, and the General Motors Acceptance Corporation, to which the note had been transferred, took possession of the truck, and plaintiff immediately brought this suit, sounding in tort for damages by reason of the fraud and deceit which plaintiff claimed was practiced upon him at the time he purchased the truck.

Fourteen assignments of error are set out by the defendants, but we think that they may be grouped under three heads, as suggested by the defendants:

1. The petition of plaintiff was predicated on the failure to perform an oral promise of employment made prior to, or contemporaneous with, the written contract of sale of the truck, and proof of such oral promise was inadmissible.

2. (a) If the action was for fraud and deceit, predicated upon the theory of a fraudulent promise of employment to induce the purchase of the truck, defendant in error proved no cause of action, because plaintiff acted upon alleged promissory statements which could not be the basis of an action for fraud and deceit.

(b) That the parties attempting to act as representatives of the Mid-West Chevrolet Corporation were not the authorized agents of the defendant company, and that said persons had no authority, either express or implied, to bind the corporation.

3. The facts in evidence are insufficient in law to establish a cause of action for fraud and deceit, and the motions for directed verdict of the defendants should have been sustained.

Under the first proposition, counsel for the defendants contend that the cause of action pleaded in this case was predicated on the failure to perform an oral promise of employment made prior to, or contemporaneously with the written contract of sale of the truck, and that proof of such oral promise was inadmissible because inconsistent or at variance with the contract.

It is too well known to submit authorities, that the general rule is that parol evidence is inadmissible to vary the terms of a written contract between the parties, and that all negotiations had between them prior to the execution of the written instrument are merged in the writing.

An exception that is as well established as the rule itself is that parol evidence of a distinct, valid parol agreement between the parties, although prior to or contemporaneous with a written contract, is not excluded by the general rule above quoted, where it does not vary or in any way contradict the writing; and that when a writing does not express the entire agreement of the parties, extrinsic evidence is admissible with respect to the matters not provided for in the writing. The question usually arises as to whether the parol evidence sought to be introduced contradicts or alters the written contract, or leaves it to stand unchanged and simply tends to establish an additional collateral agreement.

An examination of the authorities immediately reveals a hopeless conflict, and a difficult situation in drawing the correct distinction as to when the oral evidence should be admitted and when it should be excluded.

In 22 C. J. page 1144, the text reads:

"It has been said that in the multitude of exceptions much confusion has arisen, so that the exact limit to be placed upon the exceptions depends not only upon the peculiar facts of each case, but also to some extent upon the peculiar cast of thought of the individuals composing the court."

Like the general authorities, the Oklahoma cases are somewhat in conflict upon this proposition, and while some of the decisions attempt to draw a distinction, they are very close.

Some of the Oklahoma cases which have passed upon this proposition, upholding the admissibility of the testimony, are as follows: Macklin v. Darrow Music Co., 69 Okla. 1, 169 P. 497; Powell v. Security National Bank, 141 Okla. 169, 284 P. 5; Hensley v. Moss, 132 Okla. 267, 270 P. 317; American National Bank of Ardmore v. Dunn, 143 Okla. 116, 287 P. 999; Niagara Fire Ins. Co. v. Flowers, 127 Okla. 137, 259 P. 840; Packard Oklahoma Motor Co. v. Funk, 117 Okla. 96, 245 P. 571; Edwards v. City National Bank of McAlester, 83 Okla. 204, 201 P. 233; Palestine Drug Co. v. Boggs, 167 Okla. 260, 29 P. (2d) 56. See, also, Weeks v. Medler, 20 Kan. 57, and Johnson v. McCart (Wash.) 63 P. 1121.

Some of the cases which have held that the testimony is inadmissible are as follows: Clinton National Bank v. McKennon, 26 Okla. 835, 110 P. 649; Duffey v. Scientific American Comp. Dept., 30 Okla. 742, 120 P. 1088; Colbert v. First National Bank of Ardmore, 38 Okla. 391, 133 P. 206; Union National Bank v. Lavacota Oil & Gas Co., 89 Okla. 258 213 P. 869; Stebbins v. Lena Lumber Co., 89 Okla. 244, 214 P. 918; Posey v. Citizens' State Bank, 93 Okla. 266, 220 P. 628; Frickle v. Norval & Dial, Inc., 118 Okla. 41, 246 P. 381; Blankenburg v. Norval & Dial, Inc., 135 Okla. 131, 275 P. 1040; also, Stein v. Fogarty (Idaho) 43 P. 681; Munn v. Earl C. Anthony, Inc., (Cal. App.) 171 P. 1082; Kelly v. Ellis (Mont.) 104 P. 873; R. L. Burke Music Co. v. Miller (Mo. App.) 187 S. W. 141; also cases from other states.

It will be noted that in practically all of the cases above quoted, in which the oral evidence was admitted as being in conflict with the writing, they were actions brought upon the original instruments, and were not actions for fraud and deceit, sounding in tort, as in the instant case.

From a reading of the petition filed in this case, it will be observed that the plaintiff has not pitched his cause of action as outlined in the above cases, but has really pitched it as an action for fraud and deceit predicated upon the theory of a fraudulent promise of employment to induce the purchase of the truck; and this view was taken by the trial court, as suggested in the brief of the defendants, where it is said:

"The trial court took the view that the petition stated a cause of action for damages for fraud and deceit—that is, for a legal wrong, independent of the contract of sale, and it was upon that theory only that the testimony objected to was admitted."

We have carefully read the testimony in this case, and the authorities submitted in the briefs, and have come to the conclusion that the trial court was right in holding that this was an action for fraud and deceit; and the testimony having been submitted to the jury, and the jury having passed thereon, that the court did not err in upholding this verdict. This cause comes squarely within the rule announced in the case of McLean v. Southwestern Casualty Ins. Co. of Oklahoma, 61 Okla. 79, 159 P. 660.

In this case the plaintiff, McLean, subscribed for 90 shares of stock of the insurance company, and agreed to pay $50 per share, paid $15 per share in cash with the subscription, and gave two notes for the remainder of the purchase price. The contract was in writing, and provided:

"As soon as the full purchase price is paid hereon in cash, a certificate for the stock showing same to be fully paid and nonassessable to be issued and delivered to me. It is further understood and agreed that no conditions other than those printed herein shall be binding on the company, and that all cash payments hereon shall be the liquidated damages to the company should I fail or refuse to complete this subscription."

In this case the defendant demurred to the plaintiff's evidence on the ground that it sought to vary the terms of a written contract, and because the allegations of fraud were insufficient to raise the issue of fraud sufficient to go to the jury. A demurrer was sustained, and judgment rendered for defendants, the plaintiff appealed, and the case was reversed.

It was contended by the plaintiff in that case that, at the time the written contract was entered into, it was agreed that if he would take the stock the company would employ him as its medical examiner at an agreed salary of $1,500 per year; that he paid $1,375 in cash on subscription and gave his note for the deferred payments; that the sole inducement and consideration prompting him to purchase this stock was the agreement to employ him at the stipulated salary as medical examiner; that after obtaining his subscription and the cash

payments the defendants refused to employ him; that the representation of the intention of the defendants to employ him as its medical examiner was false, and known to the defendants to be false at the time of making same, and was made without intention on the part of the defendants of performing the same; and that it was through no fault of his that he was not employed.

This is practically the same contention that is made by the plaintiff in the instant case, and the court in discussing the admissibility of this testimony, in 61 Okla. on page 80, says:

"But the rule of law in these cases is not applicable where the party alleges and proves that he was induced by material, false, and fraudulent representations, to enter into a contract which he would not have entered into but for such false and fraudulent representations. The purpose and effect of the evidence introduced in the case at bar is not to contradict or vary the terms of the written contract, but to show that the plaintiff was imposed upon, and that fraud was practiced in obtaining his signature thereto. Fraud vitiates everything it touches, and contract obtained thereby is voidable. And evidence is always admissible to show that contracts have been fraudulently obtained."

The court reviews many cases which bear upon and uphold this proposition, and then says:

"We think in the case at bar that the evidence clearly raised a question for the jury to pass upon, namely, the character of the promise and agreement of the defendant to employ the plaintiff at a salary of $1,500 per year. And if the defendant misstated its intention, and made this promise mala fide, for the purpose of inducing the plaintiff to subscribe for its stock, and without the intention of carrying it out in good faith, and the plaintiff relied upon it, and was thus induced to subscribe for the stock, it is such a fraud as the court will take cognizance of, and from which it will give relief."

This doctrine has been upheld in many cases, but we only call attention to the following: Cooper v. Ft. Smith & W. R. Co., 23 Okla. 139, 99 P. 785; Werline v. Aldred, 57 Okla. 391, 157 P. 305; Hood v. Wood, 61 Okla. 294, 161 P. 210; Stevens v. Reilly, 56 Okla. 455, 156 P. 157; Howe v. Martin, 23 Okla. 561, 102 P. 128; Joines v. Combs, 38 Okla. 380, 132 P. 1115.

In the case of Blackburn v. Morrison, 29 Okla. 510, 118 P. 402, in an able opinion by Justice Hayes, the court says:

"As a general rule, in order for false representations to be the basis of fraud, such representations must be relative to existing facts or facts which previously existed, and cannot be founded upon promises as to future acts. 20 Cyc. p. 20. There is, however, the exception to the foregoing general rule, that if the promise is accompanied with an intention not to perform it, and is made for the purpose of deceiving the promisee and inducing him to act where otherwise he would not have done so, the same constitutes fraud. Donaldson, Assignee, v. Farwell et al., 93 U. S. 631, 23 L. Ed. 993; Godwin v. Horne, 60 N. H. 485; 1 Bigelow on Fraud, 485. The gist of the fraud in the cases supporting the foregoing rule is not the breach of a promise, but the fraudulent intent of the promisor or obligor at the time he makes the promise or executes the contract, not to perform the same, and to deceive the obligee by his false promise." Citizens Bank of Headrick v. Singer, 109 Okla. 27, 234 P. 708 (see, also, same case in 79 Okla. 267, 193 P. 41); Dover Mercantile Co. v. Gates, 136 Okla. 197, 277 P. 231; Wheeler v. Pursley, 88 Okla. 27, 210 P. 1019; Welge v. Thompson, 103 Okla. 114, 229 P. 271; Williams v. Wilson, 143 Okla. 77, 287 P. 716; Franklin Bond Corp. v. Smith, 163 Okla. 70, 20 P. (2d) 912.

The court in the instant case, upon the allegations and proof of fraud and deceit, instructed the jury as follows:

"You are instructed that the plaintiff contends that the defendants fraudulently promised to keep the plaintiff and the truck he was purchasing from the defendants employed so that the plaintiff could earn enough to pay the operating expenses on said truck, plaintiff's living expenses while operating the truck enough to make the monthly payments of $78 per month on the truck, and some profit, until said truck was paid for. In this connection you are instructed that a promise made without any intention of performing it constitutes actual fraud. If at the time the promises were made by the defendants, if you find such promises were made, the defendants honestly intended to keep said promises, then and in that event such promises do not constitute fraud, and your verdict should be for the defendants. If the defendants made said promises, and at the time they made them they honestly intended to carry out said promises, but thereafter the defendants changed their minds and decided not to carry out said promises, the defendants are not guilty of actual fraud, and in that event your verdict should be for the defendants.

"To entitle the plaintiff to recover in this case the burden is upon him to establish to your satisfaction by a preponderance of the evidence, which evidence must be clear, cogent and convincing, that the defendants made the promises and representations as stated in the first part of this instruction,

and that at the time said representations and promises were made the defendants did not intend to carry out said promises, and that said promises were made with the intention that they be acted upon by the plaintiff, and that the plaintiff acted in reliance upon said promises in purchasing the truck, and that thereby the plaintiff suffered the injury and damages. If the plaintiff has failed to establish either of said facts he is not entitled to recover, and your verdict should be for the defendants. If the plaintiff has established all of said facts, by clear, cogent and convincing evidence, then and in that event your verdict should be for the plaintiff."

This instruction, in our opinion, was more favorable to the defendants in this case than they were entitled to, but of this they could not complain. The jury after hearing this instruction found for the plaintiff, which they had a right to do, and their verdict should not be set aside in a law case.

The next proposition presented by defendants was that the defendant Frank R. Crasse and one Hal Hays, who were sales managers, and the vice president of the defendant company, were not the duly authorized agents and representatives of, and therefore could not bind, the corporation.

The evidence in this case shows that the defendant Crasse was sales manager in charge of the sale of trucks for the defendant corporation at its place of business in Tulsa; and that Hal Hays was the general sales manager of the company, with the official title of vice president. They were the parties who made the representations to the plaintiff at the time he purchased the truck in question. They were held out by the company as its duly authorized representatives, and at its usual place of business, and from the evidence in this case, we are of the opinion that these parties were acting as the agents of the defendant company, and were duly authorized to represent said company, and that the company would be bound by any false or fraudulent statements made by them to the plaintiff. The question of whether or not these parties were the agents of the defendant corporation, and were acting within the scope of their actual or apparent authority, was submitted to the jury, and the jury by its verdict found that they were the agents of the company, and we think correctly so. We call attention to the case of McLean v. Southwestern Casualty Ins. Co. of Oklahoma, hereinbefore noted, in which this question was discussed as follows:

"It is also pleaded in the answer of the defendants, and insisted upon, that the person or persons making this promise and agreement with plaintiff were without authority to do so, and the company is not bound thereby. But there is some evidence that one of the parties making the representation was a director in the company. But whether he was or not, and whether he was authorized to make such representation or not, the directors delivered to the party taking the subscription blank contracts for the purpose of taking subscriptions of stock; and, under the views we take of the case, it is immaterial whether he was authorized to make this agreement or not; the company accepted the contract induced by these representations, and the $1,375 paid by plaintiff, and must also bear the burden accompanying this transaction as well as its benefits. * * *

"And in the case at bar, assuming, without deciding, that the person or persons making the representations did so without authority, there is no rule of equity and fair dealing that would permit the company to arm persons with blank contracts to take stock subscriptions, and then permit the company to accept the benefits of their misrepresentations and escape the burdens. If the company is unwilling to be bound by their representations, it must surrender the benefits obtained under them."

We call attention to the following cases upholding this doctrine: American National Bank of Ardmore v. Dunn, 143 Okla. 116, 287 P. 999; Edwards v. City National Bank of McAlester, 83 Okla. 204, 201 P. 233; Franklin Bond Corp. v. Smith, 163 Okla. 70, 20 P. (2d) 912.

We are, therefore, of the opinion that the defendant corporation was bound by the representations made by the defendant Crasse and Hal Hays, vice president of the corporation.

The next assignment of error is that the evidence is insufficient in law to constitute a cause of action for fraud and deceit, and to sustain the verdict of the jury.

We have heretofore given a part of the evidence in this case. It further shows that statements were made by the agents of the company to the plaintiff that he would be given work with his truck from which he could reasonably expect to earn enough money to pay certain expenses and the deferred installments on the purchase price of the truck; that plaintiff went to Arkansas with his truck because of representations made to him; that the character of the work, and the roads were not as represented by the defendants, and his efforts to work there were a failure; that defend-

ants had represented that others who had bought trucks had been there and found the work profitable, especially naming a man by the name of Jenkins; that Jenkins was present and testified for the plaintiff that he had found the work unprofitable, and had so telephoned the defendants prior to the sale of the truck to plaintiff; that plaintiff then at the suggestion of the defendants left the Arkansas job and returned to Oklahoma, with the promise that other work would be given him; that he was sent to another point, but the work there was not as represented; that defendants finally refused to secure other work for p'aintiff; that his truck was taken from him by the finance corporation to which the paper had been transferred, and he then instituted this suit for damages for $327 cash paid to defendants by plaintiff at the time of purchasing the truck; $624, the amount of the outstanding note: $184.63 expenses incurred by plaintiff in trying to operate the truck; $300 for two months' time in trying to operate the truck; $4,000 for injury to plaintiff's credit

The second and fifth items of damages were eliminated by the court, the other items submitted under proper instructions, and the jury returned a verdict in favor of the plaintiff for $572.06. The evidence of the defendants contradicted that of the plaintiff. Under the familiar rule that this court will not set aside a verdict of a jury upon a question of fact in a law case where it has been rendered under proper instructions, we are of the opinion that the judgment of the lower court should be, and the same is, affirmed.

The Supreme Court acknowledges the aid of Attorneys B. B. Barefoot, Adrian Melton, and Harry Hammerly in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Barefoot and approved by Mr. Melton and Mr. Hammerly, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, BUSBY, and CORN, JJ., concur.